[Civ. No. 14965. Fourth Dist., Div. One. Oct. 23, 1978.]

VERA ANN SILVEIRA et al., Plaintiffs and Respondents, v.
IMPERIAL IRRIGATION DISTRICT et al.,
Defendants and Appellants.

[Civ. No. 14964. Fourth Dist., Div. One. Oct. 23, 1978.]

DEBRA LYNN DANTICE et al., Plaintiffs and Respondents, v.
IMPERIAL IRRIGATION DISTRICT et al.,
Defendants and Appellants.

**COUNSEL**

Baltaxe, Rutkin, Kaplan & Klein, Baltaxe, Rutkin & Klein and George Baltaxe for Defendants and Appellants.

Wied & Granby, Wied, Granby & Alford, James J. Granby and C. Douglas Alford for Plaintiffs and Respondents.

**OPINION**

**BROWN (Gerald), P. J.**—Imperial Irrigation District (District) appeals the judgments awarding Debra Lynn Dantice $157,000 and Vera Ann Silveira $315,400 in wrongful death actions.

Dantice and Silveira were killed when the extended boom of the hayloader Dantice was using contacted a high voltage wire maintained by the District. The hay being loaded was owned by William Young who had stacked it underneath the wires. Silveira had been warned in writing of the danger. The law forbids operation of a hayloader within six feet of a high voltage line (Pen. Code, § 385, subd. (b)) and requires a sign on the vehicle to that effect (Pen. Code, § 385, subd. (c)). The hayloader had no sign. Dantice, Silveira, Young and the District were all found negligent. Applying comparative negligence the jury found Dantice was 55 percent negligent; Silveira 17 percent. There was no apportionment of the negligence of the defendants, they being held jointly and severally liable. The District argues comparative contribution applies.

In *American Motorcycle Assn. v. Superior Court,* 20 Cal.3d 578 [146 . Cal.Rptr. 182, 578 P.2d 899] the court rejected the doctrine of comparative contribution but adopted the equitable indemnity doctrine permitting concurrent tortfeasors to get partial indemnity from other defendants on a comparative fault basis. Where the record has been properly preserved below, a case can be sent back for apportionment of

damages. The factors to consider are surprise, unfairness and the administration of justice (*Safeway Stores* v. *Nest-Kart,* 21 Cal.3d 322, 333-334 [146 Cal.Rptr. 550, 579 P.2d 441]). Here the court and the parties knew comparative negligence had been adopted and knew of the "invaluable assistance" which could be rendered from special verdicts (*Li* v. *Yellow Cab Co.,* 13 Cal.3d 804, 824 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]). Yet, when the jury asked if it should apportion negligence among the defendants the court and the parties said no. Having had the opportunity to get the information which would be needed were the law to change, it now comes as a surprise that this issue is raised. Having completed a 4-week trial with 2,500 pages of transcript error-free, it would disrupt the administration of justice to have to retry the case almost in its entirety. Under these circumstances the benefits of *American Motorcycle* doctrine must be denied.

■ The District says the instruction on negligence per se for violating an ordinance or safety order (BAJI No. 3.45) was improperly given because it included contradictory safety standards. Under Public Utilities Code section 8029 crossarms carrying wires conducting up to 10,000 volts of electricity in rural areas must be painted yellow or carry a warning sign; General Order 95 (GO 95) of the Public Utilities Commission requires markings on crossarms suppporting conductors of 7,500-22,000 volts at certain locations in rural areas such as crossings over public thoroughfares and locations next to water tanks. "Volts" in the latter context is defined as the highest effective voltage between any two conductors. Here the testimony showed the wires carried 7,200 volts with a highest effective voltage of 12,500. The District claims it falls outside the mandate of GO 95 because there was no evidence the accident site was on a public thoroughfare or in any of the other locations to which this regulation applies. However, section 8029 and GO 95 deal with different things, that is, actual voltage and effective voltage; thus, there is no reason for the standards calling for the marking of crossarms to be the same; one might be in violation of one of the requirements and not of the other; conceding District did not need to comply with GO 95 does not excuse it from complying with section 8029 or from exercising the care of a normal person under all the circumstances. In addition, it was District who requested the instruction on GO 95. It cannot now claim there is no evidence to which it applies. The instructions were not in error.

The District says GO 95 does not apply to these poles because they were constructed before the order was effective (GO 95, § 12.3). The District never brought this to the attention of the court or counsel at trial.

District requested jury instructions based on GO 95. It cannot now claim error, having invited the court to instruct on it (6 Witkin, Cal. Procedure, (2d ed.) § 266 at p. 4257).

■ It was stipulated at trial Dantice was an independent contractor who had been hired by Silveira to help with loading the hay. District claims the court erred in not instructing the jury to impute Dantice's negligence to his boss because the work was inherently dangerous (BAJI No. 13.21). District also suggests Dantice's negligence of 55 percent should be added to Silveira's 17 percent to diminish his recovery by 72 percent. However, the concept of vicarious liability relates to injuries suffered by third parties (Rest., Torts, § 416; BAJI No. 13.21), not injuries suffered by the independent contractor. In addition, the whole thrust of the cases dealing with comparative negligence is that a person should be held responsible to the extent of his negligence (*Li* v. *Yellow Cab Co., supra,* 13 Cal.3d 804; *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578; *Safeway Stores* v. *Nest-Kart, supra,* 21 Cal.3d 322). Thus, the defendants' liability here should not be reduced because of some relationship among the plaintiffs. To do so in the manner District suggests would permit it to recover for Dantice's contributory negligence twice—once from Dantice and once from Silveira. The request for this instruction was properly refused.

The judgments are affirmed.

Cologne, J., and Welsh, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 8, 1978. Clark, J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.